UNITED STATES of America,
Plaintiff–Appellee,

v.

Watonio L. JACKSON, Defendant–
Appellant.

No. 92–3138.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 8, 1992.

Decided April 1, 1993.

**252**

Bradley D. Barbin (briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

Steven R. Keller (briefed), Columbus, OH, for defendant-appellant.

Before: MERRITT, Chief Judge; and MARTIN and BOGGS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Watonio Jackson was convicted by a jury of possession of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The jury also found Jackson guilty of conspiracy to maintain a place to distribute a controlled substance in violation of 21 U.S.C. § 846. The district court converted cash into cocaine base in order to estimate the quantity distributed by Jackson for purposes of sentencing. On appeal, Jackson challenges the sentencing decision. Jackson also contests the district court's denial of defendant's pretrial motion to compel disclosure of government informants and defendant's motion for mistrial. We affirm the convictions but remand his case to the district court for reexamination of the calculations used in converting cash into drugs and resentencing consistent with the adjusted calculations.

In June 1990, Watonio Jackson was a nineteen-year-old fugitive. Law enforcement officers in Detroit, Michigan sought Jackson pursuant to an arrest warrant for drug trafficking. Michael Yott, a special agent with the Bureau of Alcohol, Tobacco, and Firearms, located Jackson in Columbus, Ohio. On June 21, 1990, ATF agents learned that Columbus police records listed Jackson with an address of 357 Miller Avenue, Apartment A, in Columbus.

Based on this information, Yott set up a surveillance operation outside of 357 Miller Avenue. A confidential informant told law enforcement officials that an individual was distributing crack cocaine in that location. On June 22, 1990, a cooperating witness made a controlled purchase of crack cocaine in Apartment A at 357 Miller Avenue. The buyer used recorded currency that was later found in the possession of Marlin Perry, a co-defendant who was located within the premises.

Yott obtained a search warrant for 357 Miller Avenue, Apartment A, based on the recorded funds and surveillance results. On June 22, 1990, members of the Columbus Police Department and ATF agents searched the location. Watonio Jackson and thirteen other people, including co-defendants Marlin Perry and Dominique Alexander, were in the apartment. The agents found $392 in cash on Perry and $4,200 that Jackson claimed as his own money. Perry's currency included a $20 bill used by the cooperating witness to purchase crack cocaine. The agents also found a bag containing 11.44 grams of crack cocaine outside an apartment window. At the time of entry by the agents, Jackson was standing directly in front of a window and Perry was seven feet away. The agents thought that Jackson and Perry were the only people in a position to throw the bag of crack cocaine out of the window.

Two individuals inside the apartment during the raid prepared affidavits that described illegal drug activities by Jackson and Perry. The statements indicated that a person in Detroit supplied illegal drugs to Jackson and Perry for redistribution.

On November 15, 1990, a federal grand jury returned a two-count indictment against Jackson, Perry, and Alexander. The first count charged each with conspiracy to maintain a place to distribute a controlled substance. The second count charged each with possession with intent to

distribute in excess of five grams of cocaine base. The defendants received a jury trial. The jury found Jackson and Perry guilty on both counts of the indictment. The jury acquitted co-defendant Alexander of both charges. The court sentenced Jackson to fourteen years of imprisonment, the minimum sentence under the Federal Sentencing Guidelines for a total offense level of 34 and a criminal history category of II. The court ordered the defendant to serve the sentence consecutively with another fifteen-year sentence for street-level drug trafficking. The district court offered no explanation for its decision to impose a consecutive sentence.

■ The Sentencing Guidelines direct the district court to determine the quantity of drugs sold when only a small amount of drugs are seized by considering factors such as "the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant." Sentencing Guidelines § 2D1.4, comment (n.2). This determination by the district court requires a finding of fact that must be supported by a preponderance of the evidence. *See United States v. Walton*, 908 F.2d 1289, 1301–02 (6th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990) (remanding two cases for resentencing because the sentencing court's estimate of the amount of drugs involved was not established by a preponderance of the evidence). We review the district court's factual findings on appeal on a "clear error" standard, which does not change the prosecution's burden of proving certain necessary facts at sentencing by a preponderance of the evidence. We are uncertain of how the district court made its factual findings because a transcript of the sentencing hearing was not preserved in the record. The record only indicates that the probation officer estimated the quantity of crack cocaine in the presentence report by adding an amount of cash converted into crack cocaine to the actual crack cocaine found at the time of arrest. The 11.44 grams of crack cocaine located outside the apartment window were considered to be under the control of Jackson and Perry. Columbus Police Officer Pat Dillon witnessed a man throw a plastic bag containing a white substance out an apartment window at the time of the raid. The officers also seized $4,200 in cash from Jackson and $392 from Perry. The total of these amounts is $4,592. According to the probation officer, the "street value" of crack cocaine in the Columbus area is approximately $1,000 per ounce. The probation officer divided $1,000 into $4,592 to determine that the equivalent amount of crack cocaine sold by Jackson was 4.5 ounces, or 127 grams. The probation officer suggested that the sum of 11.44 grams and 127 grams reflected the scale of Jackson's offense. Based on Sentencing Guidelines § 2D1.1(c)(6), Jackson was assigned an offense level of 32 for an offense involving at least 50 grams of cocaine base but less than 150 grams. The total offense level was 34 after the addition of two points for specific offense characteristics under Sentencing Guidelines § 2D1.1(b)(1) because Jackson possessed a firearm during the conspiracy.

■ Jackson objected to the probation officer's conversion of cash into cocaine and now appeals this conversion. This circuit and others have used Application Note 2 to the Sentencing Guidelines § 2D1.4 to approve the conversion of seized currency into its equivalent in drugs. *See Walton*, 908 F.2d at 1301–02; *United States v. Hicks*, 948 F.2d 877, 881–83 (4th Cir.1991); *United States v. Stephenson*, 924 F.2d 753, 764–65 (8th Cir.1991); and *United States v. Gerante*, 891 F.2d 364, 368–70 (1st Cir. 1989). The findings of fact used at sentencing, such as the conversion ratio, must be supported by a preponderance of the evidence. *See Walton*, 908 F.2d at 1302 (applying the preponderance-of-the-evidence standard to determine base offense level); *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir.1991) (using the preponderance-of-the-evidence standard for sentence enhancements); *cf. McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) ("[W]e have little difficulty concluding that in this

case the preponderance standard satisfies due process.").

■ Our present inquiry is whether, at sentencing, the district court determined the quantity of drugs sold by Jackson by a preponderance of the evidence when it converted the money found during the raid into quantities of drugs. To make this calculation, we analyze both the numerator (the cash to be converted) and the denominator ("the drug unit value"). *See United States v. Watts*, 950 F.2d 508, 514 (8th Cir.1991) (reviewing calculation of the drug unit value after establishing the amount of cash to be converted). The record does not indicate how the district court determined the drug unit value at sentencing. There was some evidence in the trial record of what price Jackson and Perry charged for crack cocaine. Barbara Harris, a resident of Apartment A on Miller Avenue, testified that Perry and Jackson charged $25 per "rock." Her testimony indicated, however, that the rocks were not consistently the same weight. Consequently, depending upon the amount established by the prosecution by a preponderance of the evidence, Jackson may receive a lower or higher base offense level and sentencing range.

■ Until this court *en banc* reverses *Walton*, the concurring opinion is in error by implying that a district court may make factual findings at sentencing which have not been proven by the prosecution. If the factual finding regarding the amount of cocaine sold by a defendant, a finding necessary to determine the defendant's base offense level, requires a finding concerning the price of cocaine at some specific place at some specific point in time, then due process requires that those findings be established by a preponderance of the evidence. *See Walton*, 908 F.2d at 1302 ("We only hold that where a fact is crucial to the determination of a defendant's guidelines base offense level or criminal history score then it must be proven [by a preponderance of the evidence].") To sentence a defendant based on facts established at someone else's trial (in the words of the concurrence, through the district court's "consideration of its docket") violates due process.

We remand this case to reexamine the method of conversion of cash into drugs. The district court will have an opportunity to explain what evidence the court relied on in determining the amount of cocaine that was sold.

The second issue in this case is the district court's decision to have Jackson's Ohio sentence run consecutively to a sentence imposed in Michigan for another drug trafficking conviction. Without explanation, the Ohio district court imposed a fourteen-year sentence for the conspiracy and possession charges and ruled that this sentence should begin after Jackson completes his fifteen-year sentence imposed by the district court in Detroit. A district court is authorized to impose consecutive or concurrent sentences if a term of imprisonment is imposed on a defendant already subject to another sentence. 18 U.S.C. § 3584. ("[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms *may* run concurrently or consecutively. . . .") (italics added); *United States v. Jones*, Nos. 92–5272, 92–5273, 1993 WL 8743, *2 (6th Cir. Jan. 19, 1993) (per curiam). Section 3584(b) requires the district court to consider the factors listed in 18 U.S.C. § 3553(a) when deciding on concurrent or consecutive sentences. These factors include, among other items, the nature of the offense and the Sentencing Guidelines.[1] Because we have already held that this case is to be remanded based on the cash-to-drug-conversion ratio, we need not decide whether the imposition of consecutive sentences constituted an abuse of discretion. However, because the record contains no evidence of what factors the district court considered before imposing consecutive sentences, the district court should

---

1. In particular, the district court must consider U.S.S.G. §§ 5G1.3 and 5G1.2 as they existed at the time Jackson was sentenced, January 22, 1992. *See United States v. Gross*, 979 F.2d 1048 (5th Cir.1992).

provide a rationale for imposing consecutive sentences.

All of Jackson's remaining arguments raised in this appeal are without merit. Jackson contends that his pretrial motion to compel disclosure of the true names and addresses of government informants should have been granted. On this point, the Supreme Court has clearly stated that "no fixed rule with respect to disclosure is justifiable." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957). Invocation of the right to prepare a defense does not automatically outweigh the public interest in protecting informants. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992) (quoting *Taylor v. Illinois,* 484 U.S. 400, 414, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988)). This court has established that "danger to an informant's life must be given significant weight in striking the *Roviaro* balance." *United States v. Straughter,* 950 F.2d 1223, 1232 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1505, 117 L.Ed.2d 643 (1992).

The district court had a valid basis for its decision to deny disclosure. The unnamed informer was not a participant in the conspiracy and possession offenses with which Jackson was charged. The informer was not in the apartment when Jackson was arrested. Jackson was not charged in relation to the controlled sale to the informant. Consequently, the district court did not err in denying Jackson's motion to compel disclosure.

Another argument raised by Jackson is that he was denied a fair trial because the prosecutor's closing argument characterized his activities as generating $5,000 per day without having introduced such evidence at trial. A criminal conviction should not be reversed because of a prosecutor's comments alone but should be reviewed in context in order to determine whether the statements affected the fairness of the trial. Prosecutorial misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Mahar,* 801 F.2d 1477, 1503 (6th Cir.1986). The district court did not abuse its discretion by denying Jackson's motion for mistrial based on the prosecutor's comments. The court appropriately and in a timely fashion cured the error by allowing the prosecutor to withdraw the statement. Thus, Jackson's argument is without merit.

For the foregoing reasons, we affirm Jackson's convictions but remand for resentencing with instructions to recalculate the conversion of cash into cocaine base in conformity with this opinion.

BOGGS, Circuit Judge, concurring.

I agree with the court's analysis of the necessity for the district court to state its reasons for making the sentence consecutive to, rather than concurrent with, the previous sentence imposed upon him in federal district court in Michigan. I therefore concur in the judgment of the court remanding this case for resentencing.

However, I think the court's opinion concerning the value of drugs is overly stringent, particularly in this case. I start with the premise that factual findings in sentencing decisions are reviewed only for "clear error." *United States v. Sivils,* 960 F.2d 587, 596 (6th Cir.1992). Considering the standard merely as "preponderance of the evidence" does not give sufficient deference to the expertise and scope of the district court. I do not think it is necessary for a district court to take evidence in every case on the street value of cocaine within its jurisdiction. It has plenty of opportunity to acquire information on that subject throughout its consideration of its docket.

In this particular case, the district court would have to be very wrong, indeed, for any change in the calculated value of cocaine to make any difference in the sentence imposed. There is no question that 11.44 grams can be attributed to the defendant, as well as the cocaine equivalent of $4592. Since the crucial category break occurs at 50 grams, U.S.S.G. § 2D1.1(c)(6), all of the calculations boil down to whether $4592 can be considered equivalent to at least 38.56 grams of cocaine.

When we do the arithmetic, we find that if the value assigned is anything less than $3376 per ounce, or $119 per gram, then there is no error in the sentence. Even the most favorable testimony anywhere in the record, using a street rather than a wholesale value, which the judge is not required to do, implies a value of no more than $100 per gram. I therefore would not hold that the district court clearly erred in determining that the specific offense conduct in this case involved more than 50 grams of cocaine.